**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALBERT FRAZIER,<br><br>Plaintiff,<br><br>v.<br><br>C.O. KENNETH ADAMS, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2:25-cv-00737<br><br>District Judge Arthur J. Schwab<br>Magistrate Judge Kezia O. L. Taylor<br><br>ECF No. 8 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

For the reasons set forth herein, it is respectfully recommended that Defendants' partial motion to dismiss be denied.

## II. REPORT

### A. Procedural Background

The events giving rise to this lawsuit occurred on January 19, 2024, while Plaintiff Albert Frazier ("Plaintiff") was housed at SCI-Fayette. ECF No. 7, *generally*. Plaintiff initiated this counseled prisoner civil rights action on May 29, 2025. ECF No. 1. On July 24, 2025, Plaintiff sought leave to file an amended complaint. ECF No. 5. This Court granted Plaintiff's motion and the amended complaint was filed on July 25, 2025. ECF Nos. 6, 7. In his amended complaint, Plaintiff brings constitutional and state law claims against numerous Department of Corrections ("DOC") employees from two institutions, related to a use of force incident that occurred while Plaintiff was housed at SCI-Fayette and subsequent retaliation that he experienced after being transferred to SCI-Houtzdale. ECF No. 7, *generally*. As relief, Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees. *Id*. at 28.

Defendants Adams and Stacoviak ("Moving Defendants") filed a partial motion to

dismiss, seeking only dismissal of Plaintiff's state law claims, to which Plaintiff filed a response in opposition. ECF Nos. 8, 10.[1] Moving Defendants' motion is ripe for review.

**B. Factual Allegations**

On January 19, 2024, Moving Defendants were assigned to conduct cell searches, including Plaintiff's cell. ECF No. 7 ¶ 12, 15, 21. Plaintiff was not aware of this search, nor was he advised that his cell door would be opened, as required by DOC policies, and after his cell door was propped open, he tried to close his door thinking that it was opened in error. *Id.* ¶¶ 16-20. As Plaintiff began to close his cell door, Defendant Adams "ran to his cell door and opened it forcefully." *Id.* ¶ 20. At that time, Defendant Stacoviak arrived and both Defendants entered Plaintiff's cell without responding to his question about what was going on. *Id.* Plaintiff tried to pick up his rug so as to prevent it from getting dirty, at which time Defendant Adams yelled that Plaintiff was trying to swallow something and tackled Plaintiff from behind, resulting in Plaintiff being face-down on the ground. *Id.* ¶¶ 23, 24. While on the ground, and not resisting, Defendant Adams "was kneeling with force on top of and pressing with his knee on Plaintiff's back . . . [a]t the same time, Defendant Stacoviak was sitting or kneeling with force on top of and holding down Plaintiff's legs." *Id.* ¶¶ 25 26. Defendant Adams handcuffed Plaintiff behind his back, and while Defendant Stacoviak held Plaintiff's legs down, "Defendant Adams began to punch and kick Plaintiff in the face and head." *Id.* ¶¶ 28-30. At the same time, 20 unidentified corrections officers ran toward Plaintiff's cell, with at least ten of them entering the cell and participating in the assault on Plaintiff. *Id.* ¶¶ 31-33. Those unidentified officers who remained outside of the cell and were not involved in the beating did not try to stop it. *Id.* ¶ 34. At some point thereafter, Plaintiff was lifted to his knees, and for over two minutes, continued to be beat

[1] There are also 25 John Does. John Does 1-21 refer to officers involved in the use of force incident at SCI-Fayette and John Does 21-25 refer to officers at SCI-Houtzdale. ECF No. 7 ¶¶ 9, 10.

up by Defendants Adams, Stacoviak, and "many or all" of the approximately 10 officers who had entered his cell earlier. *Id.* ¶¶ 35-37. In addition to being kicked and punched, Plaintiff was also hit over the head by a radio which caused him to feel as though he was losing consciousness. *Id.* ¶¶ 37, 38. Plaintiff then realized he was on the floor once again, and as he was once again being lifted to his knees, he heard officers order him to stop resisting, while yelling racial slurs at him and continuing to assault him. *Id.* ¶¶ 38, 39. At some point, Plaintiff heard the unit manager twice say "enough" and the officers' assault immediately ended. *Id.* ¶¶ 40, 41. A spit mask was applied, which Plaintiff believes was done in an effort to hide the bruises caused by the attack, and Plaintiff was taken to the medical unit, which required him to be outside, in freezing temperatures, and walk through a "half foot of snow and ice" while barefoot. *Id.* ¶¶ 43-53. Medical staff took x-rays and photographs of Plaintiff's face and head, and determined that his nasal cavities were fractured, he had multiple lacerations on his face and head, and his eyes and lips were bruised and swollen. *Id.* ¶¶ 56, 57. Defendant Adams continued to work on Plaintiff's block and tried to intimidate him to stop him from filing a grievance. *Id.* ¶¶ 59, 60. Notwithstanding, on January 28, 2024, Plaintiff filed a grievance related to this assault, but it was denied. *Id.* ¶¶ 58, 61, 62.

Plaintiff was transferred out of SCI-Fayette, and eventually moved to SCI-Houtzdale. *Id.* ¶ 63. Upon his arrival, Plaintiff was subject to a full body scan and placed in a dry cell for thirteen days. *Id.* ¶¶ 64-66.

**C. <u>Legal Standards</u>**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual

allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v.*

*City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). Expounding on the *Twombly* and *Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Lastly, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**D. <u>Discussion</u>**

**<u>State Law Claims</u>**

Included in Plaintiff's list of legal claims are claims for Battery and Intentional Infliction of Emotional Distress ("IIED"). ECF No. 7 at 24-27. Defendants seek dismissal of these claims, arguing that they are barred by sovereign immunity. ECF No. 9. Plaintiff counters that Moving Defendants fail to appreciate the nature and severity of the use of force incident, which necessarily removes their conduct from that which would typically be within the scope of their employment. ECF No. 10 at 4-7. At this stage of the proceedings, Plaintiff is correct.

The scope of sovereign immunity is governed by state law. *Sarin v. Magee*, 333 F. Supp. 3d 475, 481 (E.D. Pa. 2018) (citing *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 195 (3d Cir. 2008)). Pennsylvania law provides that state employees acting within the scope of their employment are entitled to sovereign immunity from most state-law claims. *See* Pa.C.S. § 2310. Immunity has been waived in only ten narrow areas involving negligence, which are defined in 42 Pa. Cons. Stat. Ann. § 8522(b). These exceptions exclude claims arising out of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.

Although the Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence against Commonwealth employees in a very limited and express set of circumstances," it has not done so for intentional torts. *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Comm. Ct. 2013) ("[S]tate employees do not lose their immunity for intentional torts, provided they are acting within the scope of their employment.") (citations omitted).

Here, Plaintiff's amended complaint is replete with allegations of severe and, arguably, unnecessarily harsh physical conduct. For example, Plaintiff avers that while he was on the ground, with his hands handcuffed behind his back, "Defendant Adams began to punch and kick Plaintiff in the face and head," ECF No. 7 ¶ 29, with other officers joining in the assault by also "punching and kicking Plaintiff about the face and head," *id*. ¶ 34, instead of intervening. During the same altercation, Moving Defendants (as well as other officers) continued to inflict physical injuries upon Plaintiff "while holding him up on his knees with his hands and arms cuffed behind his back." *Id*. ¶ 36.

In a recent case involving facts not too dissimilar from those in the case at bar, Chief Magistrate Judge Lanzillo denied corrections officers' motion to dismiss an inmate's state law claims on sovereign immunity grounds, explaining:

> If proven, a jury could readily find that the DOC would not expect corrections officers to use such excessive force and that this level of gratuitous force was not actuated, even in part, to serve the DOC. *See Minor v. Kraynak*, 155 A.3d 114, 123 (Pa. Commw. Ct. 2017) (holding that a prison guard acts outside the scope of his duties when he or she uses "deliberate and unjustified" force on an inmate "totally divorced from any need of the officer to exert control over the prisoner") (citation omitted). Indeed, "courts in this circuit have held that a correctional officer is not acting within the scope of his or her employment, and thus not entitled to the protection of sovereign immunity, when they assault an inmate without justification." *Abney v. Younker*, 2019 WL 7812383 *9 (M.D. Pa. 2019) (citing *R.B. v. Hollibaugh*, 2017 WL 661577 (M.D. Pa.). *See also Justice* 208 A.3d at 1070-71 (holding that a reasonable jury could decide that a state trooper was acting outside the scope of his employment when he wrestled to the ground and handcuffed a woman who, after a traffic stop, refused to get in his car and instead waited for a friend who could drive her car home); *Morris v. Zaken*, 2024 WL 2188585 at *7 (W.D. Pa. 2024) ("[C]ourts in this Circuit have held 'that intentionally tortious conduct which is 'unprovoked, unnecessary, or unjustified by security concerns or penological goals' does not fall within the scope of employment for purposes of sovereign immunity.") (citation omitted)).

*Miller v. Nowakowski*, No. 1:23-CV-00267, 2025 WL 1938692, at *4 (W.D. Pa. July 14, 2025). Here, the same outcome is warranted.

## III. <u>CONCLUSION</u>

At the motion to dismiss stage, accepting as true all well-pled factual allegations, as the court must, Plaintiff's allegations support a plausible inference that Moving Defendants acted outside the scope of their employment. Accordingly, it is respectfully recommended that Moving Defendants' partial motion to dismiss be denied and Plaintiff's state law claims be permitted to proceed to discovery.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights. It is recommended that no extensions of time be granted to file or respond to objections.

Dated: January 5, 2026

/s/ Kezia O. L. Taylor ________
KEZIA O. L. TAYLOR
United States Magistrate Judge